Luisa Pérez-González, Plaintiff and Appellant, *v.* Workmen's Relief Commission, Defendant and Appellee.

No. 3702. Argued January 13, 1926.—Decided July 15, 1926.

*Alberto García Ducós* for the appellant. *Attorney General George C. Butte, C. Llauger Díaz* and *Emilio Aldrey* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Plaintiff brought suit to review an adverse decision of the Workmen's Relief Commission and appeals from a judgment of dismissal.

A statement of the case and opinion filed by the district judge contains the following findings:

"First: That on April 6, 1922, Justo Velázquez González was a road overseer employed by the Insular. Government at 75 cents a day.

"Second: That while he was working as such overseer on said date of April 6, 1922, he suffered a hurt of one foot, but it was slight and did not prevent him from continuing his work.

"Third: That later, or on April 25, 1922, Justo Velázquez González died from septicopyemia of traumatic origin, the infection having begun in a wound inflicted by Velázquez upon himself with a shoe-nail which punctured the sole of his left foot near the heel, developing the consequent infection, or lymphangitis.

"Fourth: That the cause of the infection, and therefore of the death of Justo Velázquez González, was not due to a labor accident that occurred to the overseer while he was working for the Department of the Interior and within or in consequence of the duties inherent to his employment."

The sixth and last assignment specifies manifest error in the weighing of the evidence and after a careful reading of the record we fully concur in the proposition so submitted.

The uncontradicted testimony of several witnesses shows conclusively that while Velázquez was at work with a pick

the point was deflected by striking a rock and perforated the shoe upon his left foot near the heel between the sole and the upper, and penetrated the foot. There is no conflict whatever upon this point in the evidence adduced at the trial. The finding of the court upon this feature of the case is unquestionably correct.

To the end that the record may speak for itself and not through a commentator we transcribe in full the testimony of an employee of defendant who took the stand in a double capacity as a witness for both parties, together with all the evidence presented by the commission after plaintiff had rested.

"TESTIMONY OF DR. CANCIO: This witness was called by the plaintiff as an expert also. The defendant admitted his qualification and made him its witness, whereupon he testified for the plaintiff that his name was Miguel Rodríguez Cancio Vendrell; that he was a physician and surgeon; that he practiced his profession in San Sebastián; that he knew Justo Velázquez y González and saw him on the tenth of April, 1922; that Velázquez González died and the witness certified to the death of said Velázquez; that before his death Velázquez González had lived on the Moca–San Sebastián road near kilometer 11; that Velázquez was white, and that he died of septicopyemia of traumatic origin.

"DOCUMENTARY EVIDENCE: Here the plaintiff offered in evidence a document issued in Moca on April 29, 1922, by the custodian of the civil register of that municipality certifying to the death of Justo Velázquez y González. It was admitted without objection and marked exhibit 'B' for the plaintiff.

"TESTIMONY OF DR. CANCIO: The witness continued under his former oath and in answer to questions of the plaintiff testified that Velázquez González died as a result of a puncture which brought about infection occasioning diffused phlegmon of the foot; that due to decomposition of the pus the infection spread and produced septicopyemia which unquestionably was the proximate cause of his death; that before Velázquez González died the witness examined him and found a diffused phlegmon in the left foot of traumatic origin; that he had a punctured wound on the sole of his left foot near its center and inner side at the place where the vamp of the shoe joins the sole; that Velázquez also had a slight wound near

the heel of the same foot. Questioned by the prosecuting attorney, the expert testified that he remembered that in addition to the puncture Velázquez had a slight cut on the sole of his foot near the heel; that this cut had been made by a *practicante* of Moca for the purpose of removing the pus; that it was a very slight wound which had hardly pierced through the skin; that the wound infected was the puncture in the sole of the foot near the junction of the vamp with the sole of the shoe. That it was seen clearly that the other wound had been made by a bistoury. That the serious wound was not the one made by the bistoury, because that was made in order to remove the pus; that the patient's whole foot was infected with a serious septicopyemia; that witness remembers very well that the wound which was infected was not the one on the heel, but the other (pointing to the left foot between the sole and the heel at the place where the sole joins the vamp of the shoe). That witness knows Mr. Calventy, but he does not remember Juan Bautista Soto Latorre, investigator of the Workmen's Relief Commission, although it may be that he knew said Soto Latorre. That he remembers to have informed the Commission that about April 11, 1922, he went to call on Justo Velázquez González; that there he learned that Dr. Jiménez Serra of Aguadilla and a *practicante* from Moca had already made the incision in the sole of the left foot; that from the examination made by him witness arrived at the conclusion that the patient had received a punctured wound which was serious and had caused an infectious process, giving rise to the diffused phlegmon of the foot; that the infection became generalized due to the decomposition of the pus, giving rise to a septic piohemia which caused the death of the patient four or five days later. That the witness has been physician of the Workmen's Relief Commission in San Sebastián for many years, it being his duty as such physician to attend the injured laborers. That for five or six years he has been practicing as a physician of the defendant Commission, it being his duty to attend the injured laborers when they suffer accidents; that the said injured laborer already had two wounds when witness went to see him, one of these being a puncture and the other an incision produced by a bistoury in the heel of the left foot; that the puncture was the wound which had been infected, and it was found rather to the side of the foot; that this wound was the one which appeared to be infected; that the other had been made for the purpose of removing the pus, that is to say, one was caused for the purpose of exploring and the other was casual. That he did not

see the shoes of this man, nor was his attention called to the fact that they had any rusty nail; but that the sharp wound did not correspond with that of a nail of the shoe. Being again questioned by attorney for plaintiff, the witness said that the infection was produced by a sharp wound; that when the witness went to see the patient the latter was gravely sick, having delirium and was in no attitude for telling stories or giving explanations of any kind; that witness did not ask him how the wound had been caused, but that the laborer showed him the foot and witness found there an enormous diffused phlegmon. Questioned by the court, the expert said that the sharp wound might have been caused by the point of a pickaxe such as are used on the roads and which may have slipped from a stone and landed on the foot; that there is no way of confounding a stab with a cut; that the stab was the one which was infected, and not the cut made for the purpose of exploration in order to see if there was pus; that the phlegmon was diffused; that it was necessary to chloroform the patient and to cut the foot at different parts, but that when the witness went to see the patient it was too late.

"EVIDENCE FOR THE DEFENDANT:—TESTIMONY OF DOCTOR JIMENEZ: This witness was called before the court and sworn, and answered questions of the defendant as follows: That his name is Buenaventura Jiménez Serra; that he practices as a physician and surgeon, a profession which he has been practicing for eleven or fifteen years in Aguadilla; that he is a graduate of the University of Michigan and has been filling the position of physician of the Workmen's Relief Commission of Moca and Aguadilla since the said Commission was created; that as such employee he has the duty of attending injured workmen; that he recollects having attended Justo Velázquez González in April, 1922; that he went to see him at the expense of the Municipality of Moca; that he arrived at the house of the patient and found him there; that as it was a case of infection of a leg, and it being the custom of witness to ask the laborers if they are insured with the Workmen' Relief Commission, he asked the patient and the latter told him that this was not a working accident; that the patient had a wound on a foot which was full of pus, and witness told his *practicante* to go and open the foot; that he does not remember whether or not the wound was on the sole of the foot. Cross-examined by plaintiff, the witness answered: That he is physician of the Worksmen's Relief Commission and as such he earns $100 per month. That he did not ask the injured laborer what he meant to say by 'a working accident,' nor did

he explain to the laborer what he meant to say with these words; that the laborer was gravely sick when he told this to witness; that this was the last sickness of the patient, because he died in consequence thereof. That the report which witness sent to the Commission did not make reference to the statements made by the injured laborer; that witness only has the custom of making reports in cases of working accidents. Questioned again by the prosecuting attorney, witness answered that he called on the patient accompanied by his *practicante,* Manuel Rosa, of Moca. Cross-examined by plaintiff, the witness said that said Manuel Rosa is not a licensed *practicante,* but a nurse who helps him in his cases, and that witness told this nurse to open the infected foot. Plaintiff offered rebuttal evidence as to the testimony of this witness.

"TESTIMONY OF JUAN BAUTISTA SOTÓ LATORRE:—This witness was called before the court and sworn, and answered to questions of the prosecuting attorney as follows: That his name is Juan Bautista Soto Latorre; that he is investigator of the Workmen's Relief Commission, a position which he has held for about five years; that in the year 1922, as such employee, he had to investigate the death of said Velázquez; that by order of the Commission he made an investigation of the house in which said Velázquez had died; that he found there a shoe which was said to have been used by the injured laborer; that the shoe showed a triangular cut as if made with a knife; that the shoe was an old one and had some small nails which protruded a little from the heel; that witness took various declarations, among which was that of Dr. Cancio. At this time the prosecuting attorney presented a document to the witness, who stated that said document had been signed under oath by Dr. Rodríguez Cancio before him (the witness).

"*Exhibit 'A' for defendant:*—Here the *fiscal* offered in evidence and it was admitted by the court and marked exhibit 'A' for defendant, an affidavit of Dr. Rodríguez Cancio made at San Sebastián on August 11, 1922, before J. B. S. Latorre, Investigator, which reads as follows: 'Model No. 5B-R 5646, Dec. 28, 1921—5,000.— Case No. 20,707.—Government of Porto Rico—15—Workmen's Relief Commission—Affidavit—I, Miguel Rodríguez Cancio, of age, resident of San Sebastián, physician-surgeon, under oath do hereby declare: That about the middle of April of this year I was requested by Justo Velázquez González, a resident of Moca, to assist him, he promising that he would pay me for my services, and purporting to call me as a private physician, and not as that of the Workmen's

Relief Commission.—That there I learned that he had been attended previously by Dr. Jiménez of Aguadilla and that a *practicante* from Moca had made an incision in the sole of the left foot of said injured laborer; that from my examination I came to the conclusion that the patient had received a stab in that region which brought about a progressive infection, occasioning a diffused phlegmon on the foot. The infection, due to the decomposition of the pus, spread through the whole body, bringing about a septicopyemia which later I learned caused his death four or five days later. That there I had no information to the effect that the injury was due to a working accident, and I believe that inasmuch as I was called as a private physician it was not due to such accident. That this is all that I have to say with reference to this case.—San Sebastián, August 11, 1922.— (Signed) M. Rodríguez Cancio.—Sworn and subscribed to before me: (Sgd.) J. B. S. Latorre, Inv.'

"*Affidavit by Vicente Calventy:* This witness was duly sworn and answered to questions of the *fiscal* thus: That his name is Vicente Calventy; that he is an overseer of public works and has been such for five years; that he became acquainted with Justo Velázquez González when said González worked as assistant foreman under the authority of Pedro Valentín, during the construction of the road leading from Moca to San Sebastián; that witness saw said Velázquez previous to the sixth of April, 1922; that whenever a laborer is injured it is the duty of the foreman to notify the office of witness of the accident; that these were the instructions given to Pedro Valentín; that on April 17, 1922, he was notified of the fact that said laborer had received the injury referred to in this claim. Cross-examined by attorney for plaintiff, the witness answered that the orders were given by witness to his foreman, Pedro Valentín, but he did not comply with them in this case, for the notification was not made at once. Cross-examined again by the *fiscal,* the witness said that said injured laborer worked during one and a half years under the authority of witness, and that besides he worked with the Department for more than fourteen years. Questioned by the judge, the witness answered that he did not visit said deceased either on the 6th of April, 1922, or on the 17th of the same month and year; that he did not see Velázquez, nor did he talk to him."

If the purpose of counsel in presenting exhibit "A" for the defendant was to impeach the witness Cancio Vendrell, the effort was a self-evident failure. The direct and un-

equivocal statement of Dr. Cancio Vendrell stands practically uncontradicted in, striking contrast to the unconvincing combination of remotely related admissions, circumstances and inferences contained in the evidence adduced by defendant.

Dr. Jiménez does not say that he found more than one wound in the foot or any other scratch, puncture or abrasion that might have become infected. At least two witnesses who saw the foot immediately after the accident say that there was but one wound. Velázquez said to a visiting friend, a day or two after leaving his work, that the wound had become serious. Dr. Jiménez says that at the time of his visit the patient was in a serious condition. Dr. Cancio found him delirious. Members of the family called to the stand in rebuttal denied that Velázquez made the statement imputed to him by Dr. Jiménez; but whether he did or not is not a crucial question.

When courts of last resort are not in accord as to what constitutes an accident within the meaning of more or less similar provisions in the various Workmen's Relief Compensation Acts, the opinion of the assistant foreman of a road gang can hardly be regarded as conclusive upon this point. Velázquez may have been under the impression that a self-inflicted wound, regardless of circumstances, could never be considered as an accident "occurring because of any act or function inherent in" his "work or employment and while engaged therein and as a consequence thereof." He was not cross-examined upon this point by the physician and was not available for the purpose of cross-examination at the trial. In so far as his statement may be construed as an admission that the infection did not originate in the puncture made by the pick, it is not corroborated even by the testimony of Dr. Jiménez and is contradicted by all the evidence in the case with the solitary exception of the old shoe found by another witness for the government.

The shoe upon which the case for the government seems

to rest, in so far as it was identified at all, is referred to as one of the shoes that was used by Velázquez. It does not appear that it was one of an only pair, or that it was one which was worn by him at any time immediately preceding his illness. The triangular hole observed by the investigator, if made by a knife as the witness insinuates, was not made by a pick, and especially in the absence of any showing as to what part of the shoe was cut, this circumstance points rather to the conclusion that the shoe in question was not the shoe through which the point of the pick passed. But even if this shoe were shown to be the shoe worn by Velázquez at or about the time of the accident the fact would remain that there is no other evidence in the case to support the theory of an infection originating in a scratch or puncture made by the nails in the heel of the shoe. The possibility of such an infection is entirely too remote to offset, overcome or affect the plain preponderance of the evidence in support of the plaintiff's claim that death resulted from an infection of the wound received by Velázquez while at work.

The judgment appealed from must be reversed.